# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-01687-SCT

*JERALD RANKIN*

**v.**

*CLEMENTS CADILLAC, INC.*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:               02/26/2003
TRIAL JUDGE:                    HON. W. SWAN YERGER
COURT FROM WHICH APPEALED:      HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        SANFORD E. KNOTT
ATTORNEYS FOR APPELLEE:         CASSANDRA B. WALTER
                                KEN R. ADCOCK

NATURE OF THE CASE:             CIVIL - OTHER
DISPOSITION:                    REVERSED AND REMANDED - 06/09/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is a wrongful discharge case in which the trial court, finding the plaintiff had previously settled his claim, dismissed the complaint. A divided Court of Appeals affirmed, ***Rankin v. Clements Cadillac, Inc.,*** 2004 WL 1728611 (Miss. Ct. App. 2004), and we granted certiorari. Because the claim for wrongful discharge was not settled or released, we granted certiorari and now reverse the judgments of the Court of Appeals and the trial court and remand this case to the trial court for further proceedings.

¶2.     On March 8, 2001, Jerald D. Rankin filed a complaint against Clements Cadillac, Inc., alleging that Clements wrongfully terminated his employment. Specifically, Rankin's

complaint claims: "While the Plaintiff enjoyed the status of an at-will employee, he steadfastly refused to participate in criminal fraud or false pretense against a potential buyer, and as a consequence, was wrongfully discharged . . . ."

¶3.    The alleged "criminal fraud or false pretense against a potential buyer" is described by Rankin in detail, including the name of a customer who wanted to purchase what was falsely represented to be a 1999 Cadillac Deville.  Rankin alleges he defied dealership management when he "blew the whistle" by informing the buyer the car was actually a 1998 year model.  For this, Rankin alleges, he was fired.

¶4.    Rankin's complaint further alleges, "[a]fter Plaintiff Rankin was discharged, he was further embarrassed and humiliated when while preparing to leave the Defendant's facility, he was confronted in a threatening and hostile manner by the General Manager, Greg Broadhead, who threw hot coffee upon the Plaintiff."

¶5.    Clements answered the complaint on April 23, 2001, pleading affirmative defenses of (1) mandatory arbitration, (2) due process violations (related to Rankin's claim for punitive damages), (3) plaintiff was terminated for a legitimate reason, and (4) plaintiff was an "at-will" employee.

¶6.    In February, 2002, Clements filed a Motion to Enforce Settlement.  Two months later, Clements filed a Motion to Enforce Arbitration Agreement.  The motion to enforce the settlement alleges that, on August 14, 2000, Rankin and his supervisor, Greg Broadhead, engaged in a physical altercation which resulted in each filing criminal affidavits against the other.  The motion alleges that " [o]n or before January 29, 2001, Greg Broadhead and Jerald

2

Rankin, by and through their respective counsel, reached an agreement to settle all criminal and potential civil liability against each other and agreed that each party would release each other and Broadhead's business, Clements Cadillac, Inc., from any and all liability of any type."

¶7.    Rankin alleges he never settled any claims against Clements, and Clements could produce no signed agreement indicating it was released from any liability.    Broadhead's attorney, Christopher Klotz, filed an affidavit which claimed that he "worked with Broadhead and Rankin's attorney, Sanford Knott, Esq., and reached an agreement to settle all criminal and potential civil liability against each other by agreeing that each party would release each other from any and all civil liability if both parties dropped their criminal charges against the other."

¶8.    The Klotz affidavit further states that, "[i]n reliance on the Settlement Agreement" that "each party" would release the other from civil liability, Broadhead signed a document titled "Waiver of Civil Liability," which was attached to the affidavit.    The Klotz affidavit further states:

> On the day of Mr. Broadhead's and Mr. Rankin's criminal trial, Mr. Knott stated that his client had agreed to release Mr. Broadhead from any and all liability and that Mr. Rankin would sign the document soon after the charges were dropped. Mr. Knott represented that Mr. Rankin had been physically unavailable recently to actually sign the document but had told Mr. Knott that he would sign the document fully releasing Mr. Broadhead at his earliest convenience.

¶9.    The Klotz affidavit does not claim Rankin agreed to release Clements from civil liability.    In fact, the affidavit does not even suggest that Rankin ever actually saw the waiver. The recitation in the affidavit that Rankin was "unavailable recently to actually sign the

3

document" suggests that he did not. The affidavit carefully limits Rankin's agreement to a release of "Mr. Broadhead," with no direct or indirect reference to Clements.

¶10. More importantly, the settlement and waiver of civil liability clearly limits the settlement to "any and all actions occurring on or about August 14, 2000 which gave rise to [Rankin and Broadhead] filing criminal misdemeanor charges against each other." Thus, even if the settlement did include Clements, it did not include the claim Rankin filed in his lawsuit against Clements. The complaint does not include a cause of action for assault. Rather, the complaint seeks damages for wrongful discharge. The altercation between Rankin and Broadhead could have played no part in Clements's decision to terminate Rankin, since the altercation took place after the termination.

¶11. The trial court did not address the motion to enforce the arbitration agreement, and we shall not address it on appeal. However, the trial court dismissed Rankin's complaint against Clements based on the settlement agreement. The dismissal was affirmed by the Court of Appeals. The dismissal, in effect, was a grant of summary judgment. Our standard of review of a trial court's grant of summary judgment is well established. We review summary judgments de novo. *Hardy v. Brock*, 826 So. 2d 71, 74 (Miss. 2002). The facts are viewed in the light most favorable to the nonmoving party. *Id*. The existence of a genuine issue of material fact will preclude summary judgment. *Id*. Where material facts are disputed, or where different interpretations or inferences may be drawn from undisputed material facts,

4

summary judgment is inappropriate. *See **Johnson v. City of Cleveland***, 846 So. 2d 1031, 1036 (Miss. 2003).

¶12.    Both the trial court and the Court of Appeals concentrated on the question of whether Rankin was bound by the settlement agreement, rather than the dispositive question of whether the settlement agreement reached the claims in Rankin's separate litigation against Clements.

¶13.    Having reviewed the facts in the light most favorable to Rankin, we find the trial court committed error.    We find no document or other evidence in the record to indicate Rankin settled his litigation against the dealership.    We therefore reverse the judgments of the Court of Appeals and the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

¶14.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ.,  CARLSON AND RANDOLPH, JJ., CONCUR.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**