**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CA-00361-SCT**

*PETER A. KOURY*

**v.**

*JON D. READY*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2004 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ALAN W. PERRY |
| | PHILLIP SAMUEL SYKES |
| | JOSHUA JAMES METCALF |
| ATTORNEYS FOR APPELLEE: | PAUL ANDERSON KOERBER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 07/21/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    On May 30, 2001, Jon D. Ready filed a complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against his former business partner, Peter A. Koury.[1]  The complaint asserted numerous causes of action against Koury including allegations of fraud, duress, breach of contract, and a workers' compensation claim.   The trial court granted summary judgment in favor of Koury on Ready's workers' compensation claim, as it

_____

[1]Ready previously filed a complaint on July 26, 1995, which was ultimately dismissed without prejudice for failure to prosecute on July 29, 1999.

was barred by the applicable statute of limitations. After a three-day trial, the trial court found that Ready was not under duress at the time of the signing of the dissolution agreement, but found that the dissolution agreement was procured by fraud. Therefore, the trial court looked only to the Partnership Agreement in determining the parties' rights and liabilities. The trial court awarded Ready $7,798.45 in damages and partial attorney's fees in the form of punitive damages in the amount of $23,106.27. From that judgment, Koury appeals and Ready cross-appeals.

## FACTS

¶2.     Koury and Ready's business relationship began in 1974 when Ready went to work with Koury at his accounting firm. Ready worked as an independent contractor at Koury's accounting firm for about a year, and in September of 1975, Koury and Ready formed a partnership. On January 1, 1988, a partnership agreement was executed. The name and the members of the partnership changed over time, but by 1990, the only remaining partners were Koury and Ready with the ownership interest divided between Koury and Ready as follows: Ready possessed forty-two percent of the equity in the firm, with Koury owning fifty-eight percent of the equity in the firm. Tommy Butler was also designated as a partner in the firm, but had no actual ownership interest. The Firm was named Koury, Ready, and Butler ("KRB").

¶3.     On March 30, 1990, Ready suffered a debilitating stroke which resulted in the loss of much of his eyesight. Ready never recovered enough in order to continue his practice as a certified public accountant.

2

¶4.     The partnership agreement, executed January 1, 1988, set forth the requirements and provisions concerning the method the partnership would operate in the event of such a disability.  Section 7-3 of the partnership agreement concerning disability read as follows:

Disability.   If a partner becomes disabled, physically or mentally, his distributive share of partnership profits and losses shall continue during the period of his disability in accordance with the following schedule:

a.  First six (6) months of disability - full draw and share of profits;
b.   Next twelve (12) months of disability - 100% of his monthly profits share less disability insurance benefits including workmen's compensation distributed monthly.   For purposes of this Article, the annual calendar year income of the partnership shall be prorated on a monthly basis.

The return to practice in the partnership at any time during the 18 month period after the disability occurs will restore the disabled partner to his full draw and share of the profits, commencing with the first month following his resumption of active partnership responsibilities.   A partner who has been disabled for 18 months shall be deemed to have retired at that time and retirement procedures as provided for in Paragraph 7-4 of this partnership agreement shall thereupon take effect.

¶5.     Therefore, according to the partnership agreement, Ready was entitled to his full draw and share of profits of the partnership until September 30, 1990, (six months following his stroke) and for twelve months thereafter (until September 30, 1991) he was to receive one hundred percent of his monthly profit share, less any disability insurance benefits received.  However, Ready's last draw check was received on July 13, 1990.

¶6.     On June 10, 1992, Ready assigned his partnership interest to Koury in an Agreement for Dissolution of Partnership and Liquidation of Partnership Interest ("Dissolution Agreement") which was made effective as of September 30, 1991.   In the Dissolution Agreement, the parties acknowledged that the total due to Ready as a result of his retirement

from the firm was $166,071.69, of which $80,160.86 was repayment of Ready's capital account and $85,910.83 was compensation for past services.

¶7.    In the summer of 1990, after Ready's stroke, Koury became involved in discussions with May and Co., another accounting firm, about a possible merger of the two firms. Ready was aware of the merger discussions, as Koury gave Ready a copy of the agreement of an intent to combine the two firms in early 1991. The merger proceeded on September 30, 1991 (Ready's effective date of retirement), and the two firms made arrangements that if Ready recovered, he would be a member of the merged firm.

¶8.    After signing the dissolution agreement, Ready claimed he became aware of facts which led him to believe that he was defrauded into signing the dissolution agreement. In October of 1994, Ready learned that certain accounts that had been written off as uncollectible, had been collected in October of 1991.

¶9.    Section 7-4 of the partnership agreement concerning "bad debts" read as follows:

> For a period of one year following the final accounting date[2], any collection of bad debts previously charged off shall be shared with the retiring partner . . . in the same proportion as was applicable to the partner's percentage of the profits for the fiscal period during which the bad debts were charged off on the books of the partnership as being uncollectible.

The dissolution agreement contained a similar provision in Section 7 which read as follows:

> in accordance with Section 7-4 of the Partnership Agreement, the Firm and/or Remaining Partners shall pay Ready forty-two percent (42%) of any "net bad debts" collected prior to September 30, 1992. "Net bad debts" shall be defined as any collections of accounts receivable of the Firm written off as being uncollectible prior to September 30, 1991, net of any related expenses of collection. Also, should any account receivable or work in process of the Firm

---

[2]The accounting was to be made at the end of the month in which his retirement was to take place, which was September 30, 1991.

4

for which Ready and JDRL were given credit in computing the amount set forth in paragraph 3 be written off, or down, or otherwise be deemed uncollectible, Ready and/or JDRL shall bear a forty-two percent (42%) share of such amount written off, or down, or deemed uncollectible.

Koury agreed that, if Ready is owed a share of collections after September 30, 1992, then Koury would owe Ready the additional amount of $7,798.45. However, if the cut off date for credit received for bad debts was held to be September 30, 1992, then Ready would owe Koury $3,871.96

¶10. As part of the partnership dissolution, the furniture, fixtures, and equipment was valued at $23,873. However, Ready learned that in the May and Co. merger, the furniture and fixtures were valued at $97,429.

¶11. At trial, Ready sought his interest of the value of the accounts receivables, furniture, fixtures and equipment, and the revenue of KRB, that he alleged he had not received upon dissolution. The trial court found that Ready was entitled to recover $7,798.45 as additional compensation for his share of the accounts receivable, and also awarded attorney's fees to Ready. The trial court also found that Ready had been defrauded in the procurement of the dissolution agreement.

## ANALYSIS

¶12. The proper standard of review for this Court to apply to the chancery court's decision is abuse of discretion. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000). "We will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *G.B. "Boots" Smith Corp. v. Cobb*, 860 So. 2d 774, 776-77 (Miss. 2003). "Questions concerning the construction

5

of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." ***Miss. State Highway Comm'n v. Patterson Enters. Ltd.*** 627 So. 2d 261, 263 (Miss. 1993).

### I.    Accounts receivable

¶13.    The opinion and order of the trial court stated the following:

> The Court finds that Defendant failed to disclose certain accounts receivable and work-in process but that Defendant did not misrepresent the value of furniture or fixtures. An agreement procured by fraud or misrepresentation is voidable. ***Turner v. Wakefield, 481 So. 2d 846, 848-849 (Miss. 1985).*** Therefore, it is necessary to look only to the Partnership Agreement to determine the parties' rights and liabilities.

Because the trial court determined that the agreement was procured by fraud, this Court must examine the elements of fraud which are as follows: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. ***Mabus v. St. James Episcopal Church***, 884 So. 2d 747, 762 (Miss. 2004).

¶14.    The trial court's finding of fraud was predicated upon Koury's alleged failure to disclose certain accounts receivable and work in progress. However Koury's alleged failure to disclose does not automatically result in a finding of fraud, as all other elements of fraud must be satisfied in order to support a finding of fraud. Assuming arguendo that Koury did misrepresent certain accounts receivable, Ready must have suffered damages as the consequences thereof. Also, "proving fraud is difficult, as it ought to be. Clear and convincing

evidence is required." ***Martin v. Winfield*** 455 So. 2d 762, 764 (Miss. 1984), citing ***Cotton v. McConnell***, 435 So.2d 683, 685-89 (Miss. 1983); ***Franklin v. Lovitt Equip. Co.,*** 420 So. 2d 1370, 1373 (Miss. 1982).

¶15.    The partnership agreement stated that for a period of one year following the final accounting date, any collection of bad debts previously charged off would be shared with the retiring partner.    Furthermore the dissolution agreement provided that, "the Firm and/or Remaining Partners shall pay Ready forty-two percent (42%) of any "net bad debts" collected prior to September 30, 1992."    Our law requires this Court to accept the plain meaning of a contract as the intent of the parties if no ambiguity exists. ***IP Timberlands Operating Co. v. Denmiss Corp.***, 726 So. 2d 96, 108 (Miss. 1998).    "Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent." ***Cobb***,    860 So. 2d at 777.    This Court finds no ambiguity in either contract, as each state that any collections on bad debts will be paid to the retiring partner until a year after the retirement date, which in Ready's case would have been September 30, 1992.

¶16.    The trial court was aware of this one-year collection period, as it stated in its opinion and order that, "for one year following the accounting, any collection of bad debts previously charged off are to be shared with the retiring partner."    However, in awarding damages to the plaintiff, the trial court relied on Guy Story's report, which included accounts receivables through the year 1996.    This was contrary to the plain language of the partnership and dissolution agreements, as both agreements provided that Ready was entitled to credit from these accounts only up until September 30, 1992; a year after his retirement date.    "Contracts are solemn obligations and the Court must give them effect as written."    ***Id.***    Because Ready

7

was only entitled to credit for these accounts until Sept. 30, 1992, Ready actually owed Koury $3,871.96,[3] based on the clear unambiguous words of both agreements.

¶17. Notwithstanding this, the chancellor found in favor of Ready in the amount of $7,798.45, based on the report of Guy Story, a certified public accountant, which was verified by the plaintiff's expert Mark Bullock, also a CPA, as the amount that Koury owed Ready for accounts receivables not disclosed to Ready. In calculating this amount of $7,798.45, Story and Bullock calculated account receivables until the year 1996. However, if account receivables and "net bad debts" were only calculated until September 30, 1992, Ready would have actually owed Koury $3,871.96.[4]

¶18. The alleged failure of Koury to disclose accounts receivable to Ready caused no injury as Ready actually owed $3,871.96 to Koury. Because Ready owed Koury, Ready was not injured from this nondisclosure. Absent injury there can be no fraud. *General Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 270 (Miss. 1999). "It is clearly the law that a misrepresentation which neither does a plaintiff any harm nor causes a loss is not actionable." *McMullan v. Geosouthern Energy Corp.*, 556 So. 2d 1033, 1037 (Miss. 1990), citing *Monsanto Co. v. Cochran*, 254 Miss. 399, 180 So. 2d 624 (1965). Accordingly, this Court finds an essential element of fraud absent, with respect to Koury's failure to disclose accounts receivables. Finding no injury, this Court does not analyze whether the other

---

[3]Koury has waived recovery of this amount.

[4]Koury did not attempt to collect this amount.

8

elements of fraud were present. Clear and convincing evidence does not exist to support a finding of fraud.

**II. Was Ready entitled to additional money for furniture, fixtures, and equipment and for the May and Company merger?**

¶19. The trial court found that Koury did not misrepresent the value of furniture and fixtures. Furthermore, the trial court did not award Ready any money from the May and Company merger. "Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed." *In re Conservatorship of Bardwell*, 849 So. 2d 1240, 1245 (Miss. 2003). This Court finds substantial evidence to support the chancellor's finding that Koury did not misrepresent the value of the furniture and fixtures. This Court finds substantial evidence in support of the trial court's decision not to award Ready any damages for the May and Company merger.

¶20. Ready was paid $23,873 for the furniture, fixtures, and equipment which was derived from appraisals that were used in an earlier dispute between former partners of KRB. In the merger with May and Company, the furniture, fixtures, and equipment were valued using the tax assessors' value which was $97,429. This Court finds no fraud with respect to the appraisal method and value used to determine how much Ready would be paid for the furniture and fixtures.

¶21. Both Ready and his counsel knew that May & Company was paying Koury the assessed value for the furniture and fixtures before Ready signed the dissolution agreement. It was a subject of negotiations between the parties. Ready's attorney testified that he knew that what Koury had agreed to pay Ready was not the assessed value. Ready also knew of the plans to

9

merge with May and Company, as he was presented with an agreement of intent for the merger on January 18, 1991. As stated earlier, without damages or injury, there can be no fraud. *Mabus*, 884 So. 2d at 762. Furthermore, the merger did not take place until one day after Ready retired, and per the partnership agreement, Ready was only entitled to his interest in KRB until the day he retired. This Court can not find evidence to support a finding of fraud concerning the valuation of furniture, fixtures, and equipment or the merger with May and Company.

## CONCLUSION

¶22. Finding that all elements of fraud were not proven, we reverse the trial court's judgment awarding damages and render judgment for Koury that Ready take nothing and his complaint and this action are finally dismissed with prejudice.

¶23. **REVERSED AND RENDERED.**

    **SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J. AND DIAZ, J., NOT PARTICIPATING.**