914 So.2d 807 (2005)
Lorann Ann COLEMAN, Appellant
v.
Christopher SMITH, Grand Casinos, Incorporated, BL Development Corporation and Park Place Entertainment Corporation, Appellees.
No. 2004-CA-01918-COA.
Court of Appeals of Mississippi.
November 8, 2005.
*809 Lucius Edwards, Hernando, attorney for appellant.
John H. Dunbar, Walter Alan Davis, Oxford, Josiah Dennis Coleman, Tupelo, attorneys for appellees.
Before KING, C.J., IRVING and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Lorann Coleman appeals the granting of summary judgment by the Tunica County Circuit Court in favor of Christopher Smith, Grand Casino, Inc., BL Development Corp., and Park Place Entertainment Corp. Coleman raises the following issue on appeal:

I. Whether the trial court committed reversible error in granting the Appellee's Motion for Summary Judgment.

STATEMENT OF FACTS AND PROCEEDINGS BELOW
¶ 2. Lorann Coleman began working as a cook at the Delta Blues Café at the Grand Casino in Tunica when it first opened in 1996. She was eventually promoted to supervisor. While Coleman's primary functions were to supervise café employees and count the money at the end of her shift, Coleman did a little bit of everything  helped prepare food, ensured food quality, helped clean the café, and worked the cash register.
¶ 3. After the café's manager expressed concern about unusually high food costs, Chris Smith, a security officer with the Grand Casino, began an investigation. On March 15, 1999,[1] Smith reviewed several *810 surveillance tapes. Based upon his observation, Smith filed an incident report. In that report, he noted that Sandra Harris, a café employee, took money from a customer, and instead of placing the money in the cash register, she placed it on top of the register. After the customer left, Harris took the money on top of the cash register and walked away from the camera's view. She then returned without the money in hand. Within five minutes Harris repeated this process after another transaction. About an hour later, Harris took money out of the register, placed it on top of the register, began shuffling the money in her hands, then dropped her right hand down by her side. However, her right pocket was blocked from the camera's view by another employee. Nearly an hour later, Harris received money from another customer and placed it in the tip jar instead of the cash register. Harris later took more money out of the register and placed it in the tip jar near the register. She later took the money out of the tip jar and placed some of it in her purse. Another tape showed a second employee taking money in a similar fashion.
¶ 4. Based upon the review of the surveillance tapes, Sandra Harris was called to the interview room in the casino and questioned by Assistant Manager James Nead. Harris admitted participation in the embezzlement scheme, stating that she performed such acts about three times a day. She then revealed that several fellow employees, including Coleman, also participated in this scheme. The next day another employee was called to the interview room where she too admitted to participation in the scheme and implicated the same employees that Harris had implicated. However, she indicated that Coleman had a more passive role in the scheme. The employee said that instead of directly taking the money, Coleman would simply allow this activity to occur, then ask for "her cut." This employee said that all participants gave Coleman a share so she would not report them.
¶ 5. Coleman, who was questioned by Grand Casino security officers on March 16, adamantly denied any involvement in the scheme. No surveillance tapes showed Coleman taking or receiving any money. Based upon the information provided by co-employees, Coleman was arrested for receiving embezzled goods in violation of Mississippi Code § 97-23-23(1999). She was held for more than twenty-four hours without bond.[2]
¶ 6. While several participants in the scam were arrested, only Coleman was selected for prosecution. The other participants entered into an agreement to pay the money back in exchange for the casino not pursuing criminal charges against them. Coleman was released when a justice court judge found that there was not enough evidence to hold Coleman over for trial. Upon initiation by the county prosecutor, a nolle prosequi order was entered in the Justice Court of Tunica County. On June 20, 2001, Coleman filed a civil action against the Appellees alleging false and malicious arrest. Smith answered on October 19, 2001 and filed a Motion for Summary Judgment on October 24, 2001. On November 2, 2001, Coleman filed a motion to amend her original complaint to include counts alleging negligent infliction of emotional distress, malicious prosecution, and abuse of process. The trial court denied *811 Coleman's motion to amend and granted summary judgment in favor of Smith and the corporate defendants. Coleman appealed and on April 1, 2003, this Court reversed and remanded the summary judgment and reversed and rendered the trial court's denial of Coleman's motion to amend her complaint. (See Coleman v. Smith, 841 So.2d 192 (Miss.Ct.App.2003)).
¶ 7. Coleman's amended complaint included claims for negligent arrest, abuse of process, malicious prosecution, and negligent infliction of emotional distress. Smith and the corporate defendants again moved for summary judgment, and summary judgment was once again granted. The court found that Coleman's claims hinged on whether or not Smith had probable cause to believe Coleman participated in the embezzlement scheme. The court found that not only was there ample evidence to support a finding of probable cause, but also that no reasonable juror could infer malice, an essential element of malicious prosecution. The trial court also found that Coleman failed to produce any evidence to support her contention that Smith secured process in order to collect a debt. Finally, the court found no evidence in the record to support a finding of negligent infliction of emotional distress.

STANDARD OF REVIEW
¶ 8. This Court reviews the granting of summary judgment de novo. Owens v. Thomae, 904 So.2d 207, 208 (¶ 7) (Miss.Ct.App.2005). A moving party is entitled to summary judgment as a matter of law when no genuine issue of material fact exists. Hardy v. Brock, 826 So.2d 71, 74 (¶ 14) (Miss.2002). If material facts are in contention, or if uncontested facts may be interpreted differently, summary judgment is precluded. Rankin v. Clements Cadillac, Inc., 903 So.2d 749, 751 (¶ 11) (Miss.2005). "To defeat a motion for summary judgment, the nonmoving party must make a showing sufficient to establish the existence of the elements essential to his case." Cothern v. Vickers, Inc. 759 So.2d 1241, 1245 (¶ 6) (Miss.,2000).

ANALYSIS
¶ 9. We discuss each claim separately to determine whether any of the claims should have survived summary judgment.

I. Negligent Arrest
¶ 10. Mississippi does not recognize negligent arrest as a cause of action. The states that do recognize this cause of action seem to apply a straightforward negligence analysis. See Debra T. Landis, Annotation, Liability for Negligently Causing Arrest or Prosecution of Another, 99 A.L.R.3d 1113(2004).[3] Were Mississippi to acknowledge this cause of action, Coleman's claim for negligent arrest would fail. Smith acted with probable cause in procuring Coleman's arrest and prosecution, as addressed below.

II. Malicious Prosecution
¶ 11. Malicious prosecution consists of: (1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding and (6) the suffering of injury or damage as a result of the prosecution. Condere Corp. v. Moon, 880 So.2d 1038, 1042 (¶ 13) (Miss.2004). Coleman clearly met the first three elements of malicious prosecution.
¶ 12. The malice required for malicious prosecution occurs when the primary purpose of prosecuting is one other than "bringing an offender to justice." *812 Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss.1991). Probable cause in a malicious prosecution action consists of a reasonable and honest belief in the guilt of the accused party. Page v. Wiggins, 595 So.2d 1291, 1294 (Miss.1992). "Probable cause is determined from the facts apparent to the observer when the prosecution is initiated." Benjamin v. Hooper Elec. Supply Co., Inc. 568 So.2d 1182, 1190 (Miss.1990). A claim for malicious prosecution fails when probable cause existed for the defendant to institute criminal proceedings. Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014, 1020 (¶ 14) (Miss.2002).
¶ 13. An investigation began because of rising food costs. Surveillance tapes alerted security personnel to suspicious activity regarding the placing of orders and the handling of money in the café. This suspicion was confirmed by two employees who participated in the scheme as well as a statement from at least one employee who did not participate. The participants in the embezzlement scheme signed written statements detailing their involvement, implicated Coleman as involved, and agreed to pay the money back. The participants also told investigators that they would put Coleman's cut in a knife box so that she would not report their activities to management. When Smith reviewed surveillance tapes, he observed Coleman approach and linger around the knife box yet walk away without a knife. We find that Smith had ample probable cause to believe that Coléman participated in the scheme to steal money from the café. This claim is without merit.

III. Abuse of Process
¶ 14. Abuse of process occurs when (1) a party makes an illegal use of a legal process, (2) the party has an ulterior motive, and (3) damage results from the perverted use of process. Ayles ex rel. Allen v. Allen, 907 So.2d 300, 303 (¶ 10) (Miss.2005). The Mississippi Supreme Court has said;
The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.... This Court has stated that the crucial element of this tort is the intent to abuse the privileges of the legal system.
Id.
¶ 15. Coleman complained that she was the only employee involved in the scheme who was prosecuted. She acknowledged that the other employees admitted involvement and agreed to pay the money back. Coleman attempted to establish an abuse of process claim by arguing that Smith secured her arrest only so she would pay the money she had allegedly taken back to the casino. Were this contention true, such act could conceivably meet the test for abuse of process. However, Coleman failed to present sufficient evidence to the trial court to raise a genuine issue of material fact. Coleman presented only her December 22, 2003 sworn affidavit to support her theory of abuse of process. In her affidavit Coleman stated:
At the time of my arrest, Christopher Smith, a casino security officer who appeared to be in charge, told me that the casino wasn't interested in prosecuting me and the others allegedly involved, but wanted their money back, and would continue to prosecute me until I agreed to repay what they thought was taken. That Mr. Smith said he would let me go and not prosecute if I agreed to repay the money.... That on several occasions *813 prior to my exoneration, Mr. Christopher Smith offered to drop all charges against me if I agreed to repay the money, stating frequently that they wanted the money paid and was [sic] not interested in prosecuting me.
However, in Coleman's October 17, 2003 deposition the following exchange occurred:
Q. Okay. Now, looking back at your complaint on Paragraph 19, it says that, "The Defendants in an effort to force the Plaintiff to pay monies taken by others from the Defendant abused process by bringing criminal charges against the Plaintiff."
When did anyone try to force you to pay money  the money you're talking about here in Paragraph 19?
A. No one have [sic].
Q No one has?
A No one have [sic].
"Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss.1989) (citing Russell v. Harrison, 736 F.2d 283, 287 (5th Cir.1984); Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir.1980)). "We simply may not rely upon unsupported, conclusory allegations to defeat a motion for summary judgment where there are no issues of material fact." Jacox v. Circus Circus Mississippi, Inc., 908 So.2d 181, 184 (¶ 6) (Miss.Ct.App.2005).
¶ 16. Coleman's affidavit contradicted her previous deposition testimony in which she stated that no one had attempted to force her to pay money back to the casino. Clearly, Coleman's affidavit is a self-serving attempt to create a genuine issue of material fact for her abuse of process claim. The trial court was correct in finding that Coleman failed to bring forth sufficient evidence from which a reasonable jury could conclude that Smith instituted criminal proceedings for the primary purpose of collecting a debt.
¶ 17 This claim is also without merit.

IV. Negligent Infliction of Emotional Distress
¶ 18. Finding that Smith acted with probable cause and without malice in having Coleman arrested, we also find that Smith's actions were not negligent so as to support a finding of negligent infliction of emotional distress. We find that this claim must also fail.

CONCLUSION
¶ 19. Each of Coleman's claims were legally insufficient. While Coleman attempted to create issues of fact by submitting statements from herself and other co-workers that deny her participation in the embezzlement scheme, there is no question that at the time Smith had Coleman arrested, he acted with ample probable cause. We find the trial court was, therefore, correct in granting summary judgment in favor of Smith and the corporate defendants.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The chronological sequence of events is somewhat unclear from an examination of the record. However, at least one documented event occurred before March 15, 1999. A statement from LaTunya Coleman, Lorann's niece who also worked at the café, was taken on March 13, 1999 in which LaTunya admits participation in the scheme, but implicates no one else by name.
[2] In an affidavit given on December 22, 2003 Coleman alleges that she heard Smith tell the sheriff's deputy to hold her without bail for as long as possible, or until she confessed and agreed to pay the money back.
[3] Louisiana and Texas are among the states that recognize this cause of action.