977 So.2d 369 (2007)
Anthony J. HUDSON, Appellant
v.
Elizabeth PALMER d/b/a Precision Quick Lube; Robert Palmer; Brierfield Insurance Company; Laurel Leader-Call Newspaper; Community Newspaper Holdings, Inc.; and Brian Livingston, Appellees.
No. 2006-CP-00940-COA.
Court of Appeals of Mississippi.
September 4, 2007.
Rehearing Denied December 11, 2007.
*374 Anthony J. Hudson, Appellant, pro se.
L. Grant Bennett, Wayman Dal Williamson, L. Clark Hicks, attorneys for appellees.
Before MYERS, P.J., ISHEE, ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. Anthony Hudson took his vehicle to Precision Quick Lube to be serviced. The following day he discovered the oil cap was missing and presumed that employees at Precision had failed to replace it upon completion of their work. He made repeated attempts to have Precision repair those automotive problems he claimed to be having as a result of the missing oil cap, but Precision would not comply with his requests. In fact, according to Precision, Hudson claimed to be a writer for a local newspaper and threatened to write criticizing articles concerning the business if it did not make him whole. This prompted an employee at Precision to inquiry about Hudson's employment with the paper.
¶ 2. Brian Livingston, a reporter from the paper, was sent to investigate the claim, and once he arrived at Precision he was informed of the circumstances surrounding Hudson's alleged claim of employment. After speaking with local law enforcement, Livingston informed individuals at Precision that Hudson's actions could constitute criminal charges. Notwithstanding this information, Robert Palmer, an employee at Precision, eventually filed charges against Hudson claiming a disturbance of the peace stemming from the repeated calls and alleged threats to Precision concerning damage to his vehicle. In complaints filed with the Circuit Court of Jones County in March and November of 2005 Hudson raised numerous claims against the various parties involved. These claims were later dismissed, and *375 Hudson now appeals. Finding no error, we affirm.

FACTS
¶ 3. On or around September 8, 2004, Hudson took his vehicle to Precision in Laurel, Mississippi in order to have the oil changed. After picking up his automobile from Precision, Hudson drove to Hattiesburg, Mississippi. The next day he returned to Precision and claimed that they failed to replace the oil cap at the conclusion of the previous day's service. As a result, Hudson claimed that oil had blown all over his motor. While never admitting that the original oil cap was not replaced, Precision provided a new oil cap and replaced the escaped oil.
¶ 4. Three days later Hudson experienced additional problems with his car and requested that Precision correct them. Robert Palmer, the spouse of the owner of Precision, Elizabeth Palmer, stated in his affidavit that when this was not done to Hudson's satisfaction Hudson began making numerous phone calls to Precision, made threats to picket the business, and stated that he was a writer with The Laurel Leader-Call, a local newspaper, and that he would write disparaging articles about Mr. Palmer and Precision if they refused to comply with his demands. Jessica Wilson, an employee of Precision, stated in her affidavit that she spoke with Hudson when he called regarding his complaint. Wilson claimed that Hudson was asked to quit calling the business, but nevertheless continued. She stated that on at least one call he claimed to be a writer for The Laurel Leader-Call and would publish a negative article concerning Mr. Palmer and Precision.
¶ 5. Hudson then made a claim with Precision's insurance carrier, Brierfield. In response, Brierfield sent an appraiser to inspect his vehicle. Upon his inspection, the appraiser opined that there had been a short in the alternator in Hudson's vehicle, but for reasons unrelated to the leaking oil. Notwithstanding this determination, Brierfield still made an offer of settlement of $242.67. However, Hudson rejected this offer.
¶ 6. In October 2004, but prior to October 28, 2004, The Laurel Leader-Call received a phone call inquiring about Hudson's possible employment with the paper, and Julius Brian Livingston, a reporter with the paper, was sent to Precision to investigate. After speaking with an employee of Precision, Livingston was informed that Hudson was in a dispute with Precision and threatened to write articles in The Laurel Leader-Call discouraging others from patronizing the business. Livingston later spoke with an investigator with the Jones County Sheriff's Department who advised him that if Hudson demanded and received money or something of value in response to Hudson's claim that he would write negative articles about Mr. Palmer or Precision it could amount to extortion or false pretenses. This information, along with the fact that Hudson, at no time, had been an employee of the paper, was relayed to individuals at Precision.
¶ 7. On November 17, 2004, as a result of Hudson's alleged harassment, Mr. Palmer initiated a complaint with the Laurel Police Department against Hudson alleging a disturbance of the peace, in violation of Mississippi Code Annotated section 97-35-15 (Rev.2004), and signed a criminal affidavit in support. On this same day, but apparently prior to Mr. Palmer's complaint, Hudson visited the Laurel Police Department and detailed the problems he was having with Precision. However, Hudson would later learn of the warrant and voluntarily visit the Laurel Police Department to inquire about it. Subsequently, *376 on July 28, 2005, a hearing was held in the Jones County Justice Court concerning the charges brought against Hudson, and he was found not guilty.

PROCEDURAL HISTORY
¶ 8. The pertinent procedural history is as follows. Hudson filed his initial complaint, pro se, on March 1, 2005, in the Circuit Court of Jones County and named "Robert Palmer Owner of Precision Quick Lube & Brierfield Insurance Inc aka Mississippi Insurance Managers" as defendants in civil action number 2005-37-CV3. Within his complaint Hudson recounted his version of the ordeal surrounding his missing oil cap and requested "damages for his property, $2,500 for his automobile and $250,000 for the intentional acts of Palmer and Mississippi Insurance Managers." Hudson did not specify what intentional acts he was referring to.
¶ 9. On November 10, 2005, Hudson filed his amended complaint in the above action adding Mrs. Palmer as owner and operator of Precision, and naming Mr. Palmer as an employee. Additionally, Hudson alleged that the defendants caused him to be unlawfully arrested and imprisoned, that the defendants maliciously caused him to be prosecuted, that Mr. Palmer committed fraud in his alleged misrepresentation that he was the owner of Precision, that on or about October 28, 2004, the defendants defamed Hudson while filing their charge with the Laurel Police Department, and that the defendants caused the loss of use of his vehicle.
¶ 10. On November 18, 2005, Hudson filed another complaint, pro se, in the same court and named "Brian Livingston/Employee of the Laurel Leader Call & Laurel Leader Call Newspaper & Community Newspaper Holdings, Inc & ABC Insurance Company[1]" (Livingston Defendants) as defendants. Hudson alleged that on or about October 28, 2004, Livingston "negligently and wantonly told a third person (Robert Palmer) that plaintiff was attempting to obtain monetary gain through false pretense and extortion which was not true." He further alleged that as a result of this he "was caused suffering through false arrest, defamation, and humiliation." By order dated December 8, 2005, the two civil actions were consolidated.
¶ 11. On March 13, 2006, Hudson filed a motion for summary judgment. Hudson alleged he was entitled to summary judgment on his claims of loss of property, false arrest, malicious prosecution, fraud, and defamation. Additionally, within his motion for summary judgment, Hudson requested summary judgment on new claims of abuse of process, invasion of privacy, and intentional infliction of emotional distress. In support of his motion, Hudson submitted an affidavit that listed various documents pertaining to his causes of action and attached copies of those documents to his affidavit. The defendants, Elizabeth Palmer and Robert Palmer (Palmer Defendants), along with Brierfield Insurance Company, filed a motion to strike the affidavit based upon earlier objections to the documents on the basis that they had not been properly authenticated, constituted inadmissible hearsay, had not been properly identified, or were irrelevant. Additionally, the Palmer Defendants objected on the premise that Hudson's affidavit did not comply with Rule 56(e) of the Mississippi Rules of Civil Procedure. Lastly, the Palmer Defendants moved to strike the portion of Hudson's *377 motion styled "Factual Background" as they claimed it contained only unsubstantiated assertions not supported by any evidence in record. The Livingston Defendants would later join in this motion.
¶ 12. On April 25, 2006, the Livingston Defendants filed their motion for summary judgment. The Livingston Defendants noted that Community Newspaper Holdings, Inc. was not a proper defendant as Community First Holdings, Inc., a sister company of the named defendant, was the actual publisher of The Laurel Leader-Call. This was followed by the Palmer Defendants's response to Hudson's motion for summary judgment, cross-motion for summary judgment and motion to dismiss on May 5, 2006.
¶ 13. Following a hearing on May 15, 2006, in the Circuit Court of Jones County on the Palmer Defendants's motion to strike Hudson's affidavit, Hudson's motion for summary judgment, and the Palmer Defendants's cross-motion for summary judgment and motion to dismiss, the court issued its final judgment on May 19, 2006. Within its eighteen page judgment, the court granted the Palmer Defendants's motion to strike and cross-motion for summary judgment and denied Hudson's motion for summary judgment. Additionally, as requested in the Palmer Defendants's cross-motion, the court dismissed Brierfield Insurance Company as it noted that Mississippi precedent does not recognize a direct action against an insurance company by a third party, except for purposes of seeking a declaratory judgment of coverage when coverage has been denied. The court found that the facts presented showed that Brierfield never denied coverage concerning Hudson's claim.
¶ 14. Subsequently, in a May 23, 2006 judgment, the trial court granted the Livingston Defendants' motion for summary judgment. Hudson then filed his notice of appeal on the court's May 19, 2006 and May 23, 2006 judgments.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DISMISSING BRIERFIELD.
¶ 15. Hudson argues on appeal that the trial court erred when it dismissed Brierfield as, according to Hudson, Brierfield "denied the Appellant coverage in return causing the Palmers to conspire with Brian Livingston and Crystal Dupre' to have the Appellant falsely arrested." However, there is no evidence in the record that Hudson's claim of coverage with Brierfield was denied. In fact, Hudson acknowledges that Brierfield made a settlement offer, but that he rejected it. Therefore, there is no question as to whether coverage exists for the damages Hudson claims occurred as a result of the missing oil cap. A direct action may only be brought against an insurance company when there is an issue of coverage. See M.R.C.P. 57(b)(2); Miss. Mun. Liab. Plan v. Jordan, 863 So.2d 934(¶ 19) (Miss.2003). This issue is without merit.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE APPELLEES' MOTION TO STRIKE.
¶ 16. When reviewing a trial court's decision to allow or disallow evidence this Court utilizes an abuse of discretion standard. Webb v. Braswell, 930 So.2d 387(¶ 15) (Miss.2006). The trial court found that the documents attached to Hudson's affidavit violated "numerous rules of evidence as to admissibility as raised by the defendants requiring exclusion from consideration by [the trial court]." The trial court further explained that "most of the documents were excluded on the grounds that they constituted *378 inadmissible hearsay, were not properly authenticated, were not the original presented to prove content when questions existed as to authenticity of the original, and for some, questions existed as to apparent changes that were made to copies not accurately reflective of the original." The trial court noted that another ground for granting the motion to strike was that Hudson failed to comply with M.R.E. 902(11)(C)(i).
¶ 17. Without citing any supporting authority, Hudson argues that the trial court erred in striking his affidavit and attached documentation and explained that the day of the summary judgment hearing he informed the court that he subpoenaed witnesses that would testify as to the authenticity of the documents. "It is the duty of an appellant to provide authority in support of an assignment of error." Jones v. Howell, 827 So.2d 691(¶ 40) (Miss.2002). Additionally, this Court may consider those assertions of error not supported by relevant authority to be abandoned. Id. (citing Thibodeaux v. State, 652 So.2d 153, 155 (Miss.1995)). Notwithstanding this flaw, Hudson assignment of error still fails.
¶ 18. Rule 56(e) of the Mississippi Rules of Civil Procedure states that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." M.R.C.P. 56(e). In Hudson's affidavit submitted in support of his motion for summary judgment, he made no statement nor did he personally set forth any facts, but only attached twenty copies of documents he believed entitled him to summary judgment. The attached documents fail the above requirements as they either are not based upon Hudson's personal knowledge or are otherwise inadmissible as presented. These documents include copies of receipts, unidentified handwritten notes, e-mails, correspondence between Hudson and the Better Business Bureau of Mississippi, uncertified documents from the Laurel Police Department, and other similar items. As noted by the trial court, these items were correctly excluded for various reasons to include relevancy, impermissible hearsay, and improper or lacking authentication. As such, this issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PALMER DEFENDANTS.
¶ 19. In reviewing a trial court's grant or denial of a motion for summary judgment, this Court employs a de novo standard of review. Cousin v. Enter. Leasing Company-South Cent., Inc., 948 So.2d 1287(¶ 6) (Miss.2007). So long as no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in the movant's favor. Id. Mississippi Rule of Civil Procedure 56(c) requires examination of all pleadings, admissions, answers to interrogatories, depositions, and affidavits in determining whether a genuine issue of material fact exists. M.R.C.P. 56(c). This evidence must be viewed in a light most favorable to non-moving party. Cousin, 948 So.2d at (¶ 6). The movant carries the burden of demonstrating that no genuine issue of material facts exists. Id. However, "the party opposing the motion must be diligent and `may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Harrison v. Chandler-Sampson, *379 Ins., Inc., 891 So.2d 224, 228 (Miss.2005)).
A. WHETHER THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT ON HUDSON'S CLAIM OF DEFAMATION AGAINST THE PALMER DEFENDANTS.
¶ 20. Hudson's claim of defamation was alleged in his amended complaint solely by the following sentence, "on or about October 28, 2004, the defendants defame[d] the plaintiff while filing their malicious charge with the Laurel Police Department." The trial court granted summary judgment on Hudson's claim of defamation based on its conclusion that the amended complaint alleging defamation was not filed within the period allowed by the statute of limitations and, notwithstanding this flaw, that there existed no genuine issue of material fact, and the Palmer Defendants were entitled to summary judgment as a matter of law. We find that the court's findings are sufficient to affirm the lower court's decision.
¶ 21. Under Mississippi Code Annotated section 15-1-35, causes of action for defamation must be brought within one year of their accrual. Miss.Code Ann. § 15-1-35 (Rev.2003); Ellisville State Sch. v. Merrill, 732 So.2d 198(¶ 22) (Miss.1999). As is obvious from the professed date of accrual of Hudson's alleged defamation, and the date he alleged the cause of action within his amended complaint, the time limitation specified in section 15-1-35 had expired, and, as such, Hudson's claim was untimely.
¶ 22. Hudson alleges for the first time in his brief that he did not discover these alleged untrue statements until his arrest on March 1, 2006, as a result of the Palmer Defendants's concealment of the incident report. As such, he claims that the cause did not accrue until this date. It has long been held that issues not raised at the trial court level cannot be raised on appeal. Southern v. Miss. State Hosp., 853 So.2d 1212(¶ 5) (Miss.2003) (citing Parker v. Mississippi Game & Fish Comm'n., 555 So.2d 725, 730 (Miss.1989)). Nevertheless, we address Hudson's claim.
¶ 23. An action for libel or defamation generally accrues at the time of the first publication. McCorkle v. McCorkle, 811 So.2d 258(¶ 15) (Miss.Ct.App.2001). However, an exception to this general rule was established in Staheli v. Smith, 548 So.2d 1299, 1303 (Miss.1989). The Staheli court held that in those rare instances when "because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed" the statute of limitations would not begin to run until such conditions had been met. Id. We cannot say that a police incident report is such a publication that is so secretive or inherently undiscoverable so as to delay accrual of Hudson's cause of action. Additionally, there is no evidence in the record that would show any party attempted to conceal this information from Hudson. Therefore, this issue is without merit.
B. WHETHER THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT ON HUDSON'S CLAIM OF INVASION OF PRIVACY.
¶ 24. For the first time in his motion for summary judgment, Hudson alleged invasion of privacy as a result of "the defendants . . . claiming that the plaintiff was attempting to commit False Pretense and Extortion." Despite Hudson's delay, the defendants responded to the merits of Hudson's claim in their cross-motion for summary judgment. Again, the trial court *380 granted summary judgment on the grounds that the claim was brought after the time required by the statute of limitations and on the merits of Hudson's claim, and, again, the court's findings are sufficient for this Court to affirm.
¶ 25. Additionally, Hudson adds for the first time on appeal that his invasion of privacy claim stemmed from his arrest rather than from the filing of the incident report. However, one paragraph later he states that "the Court also erred because the Appellants Invasion of Privacy claim was not time barred because of the Concealment of the defamation and conspiracy by the Laurel Police Department and Brian Livingston." Despite this confusion, the point is moot as issues not raised before the trial court may not be argued for the first time on appeal. Southern, 853 So.2d at (¶ 5).
¶ 26. A claim of invasion of privacy must be brought, within one year of its accrual. McCorkle, 811 So.2d at (¶ 13). As with defamation, Hudson's claim of invasion of privacy, if any, accrued on October 28, 2004. At the very best, Hudson alleged invasion of privacy on November 10, 2005. As this was more than one year after the cause of action accrued, Hudson's claim is barred.
C. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
¶ 27. As with Hudson's claim for invasion of privacy, he first plead intentional infliction of emotional distress in his motion for summary judgment. Again, the Palmer Defendants responded to the merits of Hudson's claim. The trial court granted summary judgment based upon the merits of Hudson's claim, or lack thereof, and as a result of the expiration of the statute of limitations prior to the filing of Hudson's amended complaint. Hudson now argues that the trial court erred in granting summary judgment on this claim because Mr. Palmer and Livingston conspired to have him arrested for extortion and false pretense while defaming him. Additionally, he again argues the statute of limitations should not apply as he was not aware of the charge against him until March 2005.
¶ 28. The statute of limitations for intentional infliction of emotional distress is one year. Jones v. B.L. Dev. Corp., 940 So.2d 961(¶ 13) (Miss.Ct.App. 2006). Hudson's claim of intentional infliction of emotional distress related to claims for defamation, invasion of privacy, or fraud that occurred on or before October 28, 2004. As with his claim for invasion of privacy, Hudson alleged his claim of intentional infliction of emotional distress no earlier than November 10, 2005. Therefore, Hudson's claim of intentional infliction of emotional distress is barred. Also, the proclaimed basis for Hudson's claim, that Livingston and Palmer conspired to have him arrested for extortion and false pretenses, is not supported in the least by the record. Not only is there no evidence of any conspiracy in the record, but the record also shows that no complaint was filed nor warrant signed containing allegations of the crimes of extortion and false pretenses.
D. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIMS OF ABUSE OF PROCESS AND MALICIOUS PROSECUTION.
(1). ABUSE OF PROCESS
¶ 29. Hudson argues that the trial court erred in granting summary judgment against his claim of abuse of process *381 because "the Palmers maliciously used the legal process in a wrongful manner to accomplish a purpose for which it was not designed." An abuse of process claim requires the plaintiff show (1) the defendant made an illegal use of a legal process, (2) the defendant had an ulterior motive, and (3) damage resulted from the perverted use of process. Ayles v. Allen, 907 So.2d 300(¶ 10) (Miss.2005). To successfully challenge the trial court's grant of summary judgment, Hudson must demonstrate the existence of each element. Id. The facts of record before this Court show that Hudson cannot meet this burden.
¶ 30. As to Hudson's claim against Mrs. Palmer, the record shows that the criminal affidavit upon which process was issued was not signed by Mrs. Palmer. Additionally, she stated in her undisputed affidavit that she did not file the October 28, 2004 incident report against Hudson with any intended malice as she believed Hudson was making numerous harassing phone calls and threats to Precision. Therefore, as Hudson cannot satisfy all elements of his claim, summary judgment was proper as a matter of law.
¶ 31. Additionally, while Mr. Palmer did file the October 28, 2004 criminal affidavit alleging that Hudson "willfully disturbed the public peace of Precision Quick Lube," the record shows that he did not do so improperly. Moreover, nothing in the record suggests that Mr. Palmer had any ulterior motive or purpose in having process issued. Mr. Palmer's undisputed affidavit establishes that he had a reasonable belief that based upon Hudson's phone calls and threats, he was within his rights to file charges against Hudson. The trial court's grant of summary judgment as to this issue is affirmed.
(2). MALICIOUS PROSECUTION
¶ 32. To prevail on a claim of malicious prosecution the plaintiff must prove the following elements by a preponderance of the evidence: (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of. Cong Vo Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014(¶ 8) (Miss.2000). As stated above, Mrs. Palmer did not initiate judicial proceedings against Hudson. Therefore, Hudson cannot sustain his burden of proof as to this claim against Mrs. Palmer and, as a consequence, summary judgment was proper.
¶ 33. It is clear by Mr. Palmer's own admissions that the first three elements of malicious prosecution are satisfied. Where Hudson's claim fails is in the lack of proof as to the requisite showing of malice and want of probable cause. In order to show malice as it pertains to a claim of malicious prosecution the plaintiff must show that "the primary purpose of prosecuting is one other than `bringing an offender to justice.'" Coleman v. Smith, 914 So.2d 807(¶ 12) (Miss.Ct.App.2005) (quoting Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss.1991)). In the context of a malicious prosecution claim, probable cause consists of a reasonable and honest belief in the guilt of the accused. Coleman, 914 So.2d at (¶ 12). Also, "[p]robable cause is determined from the facts apparent to the observer when the prosecution is initiated." Id. (quoting Benjamin v. Hooper Elec. Supply Co., Inc., 568 So.2d 1182, 1190 (Miss.1990)). If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail. Coleman, 914 So.2d at (¶ 12).
¶ 34. Mr. Palmer stated that he filed the criminal affidavit with no other motive *382 than to "stop the harassment that was being perpetrated by Mr. Hudson." There are no facts within the record that cast doubt upon this assertion. Additionally, Mr. Palmer stated that Hudson made numerous harassing phone calls to Precision and threatened to picket the business. This statement was supported by Wilson's affidavit in which she stated that she spoke with Hudson during many of the numerous calls he placed and on several occasions he would raise his voice. She also stated that Hudson was told to stop calling, but did not comply. From the undisputed affidavits of Mr. Palmer and Wilson, it is clear that there can be no showing of malice or a lack of probable cause in the institution of proceedings against Hudson.
E. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIM OF FRAUD AGAINST MR. PALMER.
¶ 35. Hudson argues he was the victim of fraud as a result of Mr. Palmer claiming to be the owner of Precision. In order to establish fraud, the plaintiff must prove: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Koury v. Ready, 911 So.2d 441(¶ 13) (Miss.2005). Additionally, fraud must be proven by clear and convincing evidence. Id. at (¶ 14).
¶ 36. Hudson alleged that Mr. Palmer fraudulently held himself out to be the owner of Precision. He claims that Mr. Palmer gave him a business card which named Mr. Palmer as owner and operator of the business, but a copy of this card was one of the several items attached to Hudson's affidavit that was struck by the trial court. Notwithstanding his lack of proper evidence that a representation was made, Hudson completely fails to establish that he suffered any damage as a result of Mr. Palmer's alleged misrepresentation. He states in his brief that "from hearing and relying on the misrepresentation of Robert Palmer, the Appellant suffered mental and emotional distress." However, "bare assertions are simply not enough to avoid summary judgment." Watson v. Johnson, 848 So.2d 873(¶ 18) (Miss.Ct.App.2002). Therefore, as there are no genuine issues of material fact as to whether Hudson suffered any damage whatsoever stemming from Mr. Palmer's alleged fraud, Mr. Palmer was entitled to summary judgment as a matter of law. This issue is without merit.
F. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT.
(1). FALSE ARREST
¶ 37. Hudson seems to argue that because he was found not guilty of the charges brought by Mr. Palmer he is entitled to summary judgment against the Palmer Defendants for his claim of false arrest. However, to sustain a claim of false arrest a plaintiff must show that the defendant caused him to be arrested falsely, unlawfully, maliciously, and without probable cause. Croft v. Grand Casino Tunica, Inc., 910 So.2d 66(¶ 34) (Miss.Ct. App.2005). Therefore, if the plaintiff's arrest is supported by probable cause the claim must fail. Id.
¶ 38. As repeatedly stated, there is no evidence that Mrs. Palmer filed a criminal affidavit against Hudson. Accordingly, she is entitled to summary judgment as a matter of law as she did not *383 cause Hudson to be arrested, falsely, unlawfully, or otherwise. As to Hudson's claim against Mr. Palmer, we established in our resolution of Issue D(2) that Mr. Palmer had the necessary probable cause to initiate charges against Hudson. Having found probable cause, this issue is without merit.
(2). FALSE IMPRISONMENT
¶ 39. To prove false imprisonment a plaintiff must show (1) detention of the plaintiff and (2) the unlawfulness of the detention. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709(¶ 28) (Miss.2001). The supreme court has also defined false imprisonment as an arrest without legal process. Nassar v. Concordia Rod & Gun Club, 682 So.2d 1035, 1039 (Miss.1996). Plaintiff has offered no facts to support the charge of false imprisonment. In addition to the fact that the record shows no instance of the Palmer Defendants ever detaining Hudson, his arrest was not unlawful, but was the result of a valid warrant being issued after an affidavit was filed in good faith. This issue is without merit.
G. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIMS OF PROPERTY DAMAGE AND LOSS OF USE
¶ 40. Hudson argues that the trial court erred in granting summary judgment against his claim of property damage and maintains that the "defendants" are liable for the alleged damage and resultant loss of use suffered as a consequence of the "defendants" alleged action of failing to replace the oil cap after completing an oil change on Hudson's car. Again, Hudson cites no authority for his argument that the trial court erred in granting summary judgment on these issues. Additionally, Hudson first argued his claim of loss of use in his motion for summary judgment. However, despite these recurring flaws in Hudson's appeal, we reach the merits of his claim of error.
¶ 41. In order for a plaintiff to prevail on a claim of negligence he must prove by a preponderance of the evidence each and every element of negligence: duty, breach, causation, and damages. Miss. Dep't of Mental Health v. Hall, 936 So.2d 917(¶ 7) (Miss.2006). Both Mr. and Mrs. Palmer stated in their respective affidavits that it was their belief that Hudson's oil cap was replaced at the conclusion of his oil change. This was not contradicted by any admissible evidence presented to the trial court. Additionally, Hudson failed to provide the trial court with any evidence that the alleged act of failing to replace the cap actually caused damage to his vehicle. In fact, there is no evidence in the record proving Hudson's vehicle sustained any damage as a result. Hudson provided no bills for repair, no properly submitted affidavits from any mechanic giving an estimate of the damage allegedly caused, or any sworn testimony demonstrating any compensable damage whatsoever. Hudson alleges that his vehicle sat "in his driveway every [sic] since September 12, 2004," presumably as a result of the alleged damage cause by the absence of the oil cap; however, bare allegations are not sufficient to defeat a grant of summary judgment. Cousin, 948 So.2d at (¶ 6). This issue is without merit.
IV. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE LIVINGSTON DEFENDANTS.
¶ 42. In his November 18, 2005 complaint against the Livingston Defendants Hudson alleged that:
On or about October 28, 2004, the defendant (Brian Livingston) employee of the Laurel Leader Call negligently and wantonly told a third party (Robert Palmer) *384 that plaintiff was attempting to obtain monetary gain through false pretense and extortion which was not true.
As a proximate consequence of the defendants said negligence and wantonness behavior, the plaintiff was caused suffering through false arrest, defamation, and humiliation.
The trial court interpreted this as claims for negligent infliction of emotional distress, false arrest, and wanton behavior related to intentional infliction of emotional distress and defamation. Hudson does not dispute this interpretation and raises the issues below pertaining to the Livingston Defendants. Concerning his claim of false arrest, in his reply brief to this Court Hudson acknowledges that any claim of false arrest against the Livingston Defendants was improper.
A. WHETHER THE TRIAL COURT ERRED IN DISMISSING COMMUNITY NEWSPAPER HOLDINGS, INC.
¶ 43. Hudson argues that Community Newspaper Holdings, Inc., is a "true and correct party" and should not have been dismissed. However, the trial court dismissed the corporation as it was neither the employer of Livingston nor the publisher of The Laurel Leader-Call at all times relevant to Hudson's complaint. This was attested to by both Livingston and Crystal Dupre, a publisher of the Laurel Leader-Call, in their affidavits. Hudson failed to present any evidence to the contrary. Accordingly, his claim of error must fail.
B. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIM OF ORDINARY NEGLIGENCE/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
¶ 44. Hudson raises two separate issues pertaining to a claim of negligence and another claim of negligent infliction of emotional distress. However, within his argument relating to ordinary negligence Hudson not only argues that Livingston's actions went beyond ordinary negligence, but that they also caused him mental and emotional distress. As such, we will address his argument as an assignment of error concerning negligent infliction of emotional distress.
¶ 45. The trial court granted summary judgment on Hudson's claim of negligent infliction of emotional distress on two grounds. First, the trial court noted that the law of this state requires a plaintiff seeking emotional distress damages from ordinary negligence show some physical manifestation of injury or demonstrable physical harm, and found that Hudson failed to sufficiently allege any physical injury. While there have been two lines of thought followed on this issue, the supreme court has recently stated that a plaintiff seeking emotional damages as a result of ordinary negligence must show some resulting demonstrable harm. See Wilson v. GMAC, 883 So.2d 56(¶ 28) (Miss. 2004) (quoting Am. Bankers' Ins. Co. v. Wells, 819 So.2d 1196(¶ 40) (Miss.2001)). Proof of Hudson's alleged emotional distress is absent from the record. Hudson stated in his brief to this Court that "the Appellant made reference again that he was under therapy for his nerves prior to this incident and his false arrest/false imprisonment, defamation, and conspiracy caused the Appellant a nervous shock." Notwithstanding the fact that Hudson admitted to a preexisting nervous condition, he failed to provide any evidence, through affidavit or otherwise, that his condition was worsened as a result of his alleged ordeal.
¶ 46. The trial court also noted that Mississippi law did not allow for a claim of *385 negligent infliction of emotional distress based upon defamation and cited Pierce v. Clarion Ledger, 433 F.Supp.2d 754, 757 (S.D.Miss.2006) and Lane v. Strang Communs. Co., 297 F.Supp.2d 897 (N.D.Miss. 2003) in support. While these cases have found that Mississippi courts have not recognized such a cause of action, to formally do so now is not necessary. Any claim for negligent infliction of emotional distress based upon defamation would obviously require a successful claim of defamation, and, as discussed below, Hudson has not met this prerequisite. This issue is without merit.
C. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIM OF DEFAMATION.
¶ 47. In granting summary judgment against Hudson's claim of defamation against Livingston, the trial court found that Livingston's relay of information from the Jones County Sheriff's Department to individuals at Precision was nothing more than a opinion. While statements of opinion are generally entitled to an absolute privilege in the realm of claims of defamation, a statement in the form of an opinion can still constitute a defamatory communication. Hamilton v. Hammons, 792 So.2d 956(¶ 16) (Miss.2001). Speaking to this point, the supreme court has stated that "opinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion." Ferguson v. Watkins, 448 So.2d 271, 276 (Miss.1984) (citing Restatement (Second) of Torts § 566 (1977)). Therefore, "whether a statement is characterized as a `fact' or `opinion' is no longer a relevant inquiry in determining whether it may be constitutionally privileged. Rather, the relevant inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact." Roussel v. Robbins, 688 So.2d 714, 723 (Miss.1996) (citations omitted).
¶ 48. Livingston stated in his affidavit that after speaking with an investigator with the sheriff's department he relayed the information he was told, namely that "if Hudson demanded and received money or something of value in response to any representation that he would otherwise write negative things about the business in the newspaper, then that could amount to extortion or false pretense." Livingston did not state that Hudson was guilty of extortion or false pretense, only that if what he was told by individuals at Precision was true that it could amount to extortion or false pretense. This statement could not be reasonably understood to imply that Hudson did, as a matter of fact, commit the crimes. Accordingly, Livingston's statement cannot be "reasonably understood as declaring or implying a provable assertion of fact." As such, his claim of defamation must fail.
D. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST HUDSON'S CLAIMS OF "WANTONNESS BEHAVIOR."
¶ 49. The trial court held that, as with Hudson's similar claim against the Palmer Defendants, his claim of intentional infliction of emotional distress against Livingston was barred by the statute of limitations. In line with our reasoning of issue II(C) above, we agree. Additionally, the trial court again spoke to Hudson's claim for defamation and held that it was also barred by Mississippi Code Annotated section 15-1-35. In line with our reasoning of issue II(A) above, we agree. As such, this issue is without merit.
*386 ¶ 50. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] Hudson included Community Newspaper Holdings as he believed it was the publisher of The Laurel Leader-Call. Additionally, ABC Insurance Company was listed as the unknown insurance carrier of the paper.