# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-CA-01792-COA

PHILIP HALBERT NEILSON

APPELLANT/CROSS-APPELLEE

v.

TOM DAWSON, ALAN LANGE, AND
PEDIMENT PUBLISHING

APPELLEES/CROSS-APPELLANTS

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2012 |
| TRIAL JUDGE: | HON. ROBERT WILLIAM ELLIOTT |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTI R. MCCOY |
| ATTORNEYS FOR APPELLEES: | GRADY F. TOLLISON JR. |
| | TAYLOR HAMILTON WEBB |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S MOTION TO DISMISS |
| DISPOSITION: | AFFIRMED - 09/16/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND JAMES, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     On December 2, 2010, Philip Halbert Neilson filed a defamation suit in the Lafayette County Circuit Court against Tom Dawson, Alan Lange, and Pediment Publishing. Neilson alleged certain statements in the book *Kings of Tort*, written by Dawson and Lange (hereinafter Dawson) and published by Pediment,[1] were libelous. After some delay relating

---

[1] Pediment was never served with process and was ultimately dismissed from the suit.

to service of process and other matters, Dawson filed a motion to dismiss. The trial court treated the motion to dismiss as a motion for summary judgment and gave the parties timely notice to present supporting evidence. After a hearing, the trial court granted relief in favor of Dawson.

¶2. Neilson now appeals, asserting the trial court erred in granting summary judgment in favor of Dawson.

FACTS

¶3. *Kings of Tort*, released on or about December 2, 2009, details the events surrounding the undercover investigation and prosecution of Richard Scruggs and others. During the investigation, Dawson was the First Assistant United States Attorney for the Northern District of Mississippi. Assisting Dawson was John Hailman, Chief of the Criminal Division of the United States Attorney for the Northern District. Both Dawson and Hailman were supervised at the time by Jim Greenlee, the United States Attorney for the Northern District. During this time, Neilson served as the FBI Supervisory Special Agent, overseeing all of the FBI agents in the Northern District of Mississippi.

¶4. A section of the book details the actions taken by Dawson, Hailman, and Greenlee after becoming aware of the attempted bribery of a local circuit court judge. The pertinent section describes the resulting decision to initiate an undercover operation:

> Paramount to their success would be secrecy and how the case agent would be supervised. From past experiences Greenlee, Dawson, and Hailman had lost confidence in . . . Neilson . . . . The three resolved to travel to Jackson FBI headquarters to consult with the special agent in charge of the entire state. To complicate matters, the FBI was in the middle of changing leaders, and the new special agent[]in[]charge (SAC) had not arrived in Jackson. Greenlee determined when he would arrive, and the three made an appointment on April

13. The new SAC had been in place one week.

The two-and-a-half-hour drive from Oxford to Jackson was filled with apprehension. They had to gain the confidence of a brand new SAC, whom they had never met, by convincing him that his supervisor in north Mississippi could not be trusted and that a new case agent and supervisor should be assigned to this investigation. This was not an easy task, as anyone familiar with the FBI as an institution would understand. Still, the makeup of the delegation was pretty convincing. The fact that the United States Attorney, his First Assistant[,] and Criminal Chief requested a confidential meeting with the [SAC] communicated how serious the matter was to them. . . .

During the meeting[,] [the new SAC, Frederick] Brink[,] was flanked by his two assistant special agents in charge, one of which was Steve Gomez, who was familiar with the concern with [Neilson] in Oxford. [Greenlee] took the lead in explaining the reason for the meeting, and Hailman and Dawson provided their judgment of the situation based on long experience.

The two major points were as such: (1) the investigation involved potential bribery by an unknown number of defendants, including a billionaire lawyer known as the King of Torts[,] who just happened to be the brother-in-law of a United States Senator, and (2) there was concern that the investigation could not be successful if [Neilson] was involved or even knew about the investigation. After much discussion, Steve Gomez came up with a suggestion that turned out to be brilliant. Special Agent Bill Delaney, who was stationed in Jackson, had been detailed to north Mississippi on an unrelated case, and if he was assigned as the case agent in the Scruggs investigation, his presence in Oxford would not be unusual. Also, [Delaney] reported to a supervisor in Jackson. This arrangement satisfied everyone's concerns. Greenlee's team offered one further provision. None but the three present in the U.S. Attorney's Office would know about the investigation. Everyone agreed to observe strict radio silence.

On the way back to Oxford, they rehashed the day's events, and Dawson wondered aloud how the Bureau received their emphatic insistence to replace [Neilson]. Although all three felt that Neilson was untrustworthy, Greenlee and Hailman surmised that the problem might be deeper than that. In any event, they were all unified in the decision to remove Neilson from the investigation.

Tom Dawson & Alan Lange, *Kings of Tort* 127-28 (Pediment Publishing 2009).

¶5. Over two weeks prior to the publication, the Northeast Mississippi Daily Journal published an article on November 14, 2009, discussing the book. The article, written by Patsy R. Brumfield, discloses that Neilson was under investigation at that time for

3

unspecified acts. Brumfield then discusses the section of *Kings of Tort* relating to Neilson. The next day, the newspaper published a book review, also written by Brumfield, of *Kings of Tort*. This review also included a one-sentence mention of the question regarding Neilson's trustworthiness.

## STANDARD OF REVIEW

¶6.     In considering a trial court's grant of a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before it – admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001) (citation omitted). The Mississippi Supreme Court recently clarified the summary-judgment standard, explaining that "[t]he movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013) (citation omitted). The supreme court further stated that "[t]he movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial." *Id*. at 88-89 (¶11) (citations omitted). The supreme court again clarified that "while [d]efendants carry the initial burden of persuading the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, [the plaintiff] carries the burden of producing sufficient evidence of the essential elements of [his] claim at the summary-judgment stage, as []he would carry the burden of production at trial." *Id*. at (¶13).

## DISCUSSION

4

## I. SUMMARY JUDGMENT

¶7.     Neilson contends the trial court erred in granting summary judgment in favor of Dawson.  Specifically, Neilson argues the statements in *Kings of Tort* are opinion and not automatically granted First Amendment protections pursuant to *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).  Neilson is correct that statements, "even if phrased as . . . opinion[s], will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact."  *Roussel v. Robbins*, 688 So. 2d 714, 723 (Miss. 1996) (quoting *Keohane v. Wilkerson*, 859 P.2d 291, 297 (Colo. Ct. App. 1994).

¶8.     To establish a claim of defamation, the following four elements must be proved:

(1) a false and defamatory statement concerning the plaintiff;

(2) unprivileged publication to [a] third party;

(3) fault amounting at least to negligence on the part of [the] publisher;

(4) and either actionability of [the] statement irrespective of special harm or [the] existence of special harm caused by publication.

*Franklin v. Thompson*, 722 So. 2d 688, 692 (¶12) (Miss. 1998).  The Mississippi Supreme Court has held that "truth is a complete defense to an action for libel."  *Blake v. Gannett Co.*, 529 So. 2d 595, 602 (Miss. 1988) (citing *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986)).  "In defamation actions, then, the threshold question . . . is whether the published statements are false."  *Blake*, 529 So. 2d at 602.  The plaintiff has the burden of proving the falsity of the statement.  *Id*.

¶9.     Neilson contends these statements are untrue based upon an investigation conducted

5

by the Department of Justice (DOJ), which Neilson alludes to in a response to Dawson's motion for summary judgment. This response was titled "Plaintiff's submission regarding defendant's motions." In his response, Neilson mentions a document produced by the DOJ regarding the investigation, but did not include the document for the trial court's (or this Court's) review.[2] The trial court refused to rely upon Neilson's "submission regarding defendant's motions" since Neilson had emailed it directly to the court the evening prior to the motion hearing rather than filing it with the clerk of the court, as was proper. The response was filed two days after the hearing.

¶10. Dawson supported his motion for summary judgment with affidavits from himself, Greenlee, and Hailman. In these separate affidavits, each man states the reason he thought Neilson was untrustworthy. These affidavits go into detail about Neilson's past conduct and how that conduct resulted in Dawson, Greenlee, and Hailman's lack of confidence in Neilson.

¶11. Neilson, on the other hand, has produced no evidence in support of his claim. Mississippi Rule of Civil Procedure 56(e) states that once a summary-judgment motion is made, the "adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Mindful of our standard of review, that Neilson "carries the burden of producing sufficient evidence of the essential elements of [his]

---

[2] In the response, Neilson states: "[T]his document was produced to [him] in his criminal trial and is not to be disseminated publicly and is therefore not attached herein. . . . [Neilson] will provide it to the Court in camera until directed by the [DOJ] that it can be publicly disseminated and discussed."

claim . . . as []he would carry the burden of production at trial," we find Neilson has failed to show the existence of a genuine issue of material fact. Thus, we affirm the trial court's decision to grant summary judgment in favor of Dawson.

## II. CROSS-APPEAL: MOTION FOR SANCTIONS

¶12. In his cross-appeal, Dawson contends the trial court erred in dismissing his motion for sanctions. We look to our familiar abuse-of-discretion standard of review in determining whether the assessment of sanctions was warranted. *Eatman v. City of Moss Point*, 809 So. 2d 591, 593 (¶6) (Miss. 2000). Under Mississippi Rule of Civil Procedure 11(b), "the court may award reasonable expenses and attorney's fees against a party or his attorney, or both, whose pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay." *Id*. A pleading is frivolous when the pleader "has no hope of success." *Id.* (citation omitted). Furthermore,"[w]hen a party espouses a viable legal theory, [Rule] 11 sanctions are inappropriate." *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 127 (Miss. 1992) (citations omitted).

¶13. In his order denying Dawson's motion for sanctions, the trial court did not find Neilson's complaint to be frivolous or filed for the purpose of harassment. Upon review of the record, we cannot find the trial court abused its discretion in denying Dawson's motion for sanctions.

¶14. **THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND MAXWELL, J., NOT PARTICIPATING.**