# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00128-COA

**JOHN KNIGHT**                                                                      **APPELLANT**

**v.**

**R.S. AND J.S.**                                                                      **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/2019 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN KNIGHT (PRO SE) |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 02/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Convicted of sexual battery of a minor, an inmate sued his victim and her mother for

defamation.  The trial court dismissed the suit for failing to state a claim since statements

made in the course of a judicial proceeding are absolutely immune.  Because this has been

the law in Mississippi dating back well over a century, we affirm.

## BACKGROUND

¶2.     The underlying facts relevant to this appeal were set out by this Court in 2019, where

we recounted that John Knight was convicted of the sexual battery of a minor—"his

twelve-year-old stepdaughter, Jane Smith." *Knight v. State*, 281 So. 3d 898, 900 (¶2) (Miss.

Ct. App. 2019), *cert. denied*, 279 So. 3d 1086 (Miss. 2019).[1]

¶3.     Knight insisted on acting as his own counsel during the trial, to poor effect. *Id*. at 905-06 (¶22). His performance was so ineffective that the first argument mustered on appeal by his appointed counsel was that Knight should not have even been able to represent himself, because he "was permitted to continuously undermine his own cause as he stubbornly and obsessively pursued his baseless theories to the consternation of the entire courtroom." During the pendency of the appeal, Knight filed over 170 motions. *Id*. at 906 n.10.

¶4.     In upholding his conviction, we determined that a defendant "cannot decide that he wants to represent himself and then, dissatisfied with[] the outcome, claim that the circuit court should have saved him from himself." *Id*. at 907 (¶29). Most important for this civil appeal, we held that "[t]he jury's verdict is not contrary to the overwhelming weight of the evidence." *Id*. at 909 (¶37).

¶5.     While the appeal of the conviction was pending, Knight filed a civil suit in Lowndes County against the victim he had sexually assaulted, as well as her mother, Rebecca. She and Knight were married shortly before the allegations of sexual assault surfaced, and they divorced in 2009.

¶6.     In his initial filing, Knight claimed the girl had "defamed" him since she "made False Allegation About John Knight raping her," which he alleged "Damaged and injured the

---

[1] In accord with that opinion, we use pseudonyms for both the minor victim and her mother to avoid the public disclosure of the minor victim's identity. Fictitious initials are used in the caption for the same reason.

reputation; and deter others from Associating with John Knight this plaintiff." He then sought a subpoena duces tecum to obtain the minor's medical records. Knight demanded $100,000,000 from his victim.

¶7.   Over time, Knight added the child's mother, Rebecca, as a co-defendant. He alleged the mother and child "Conspired together to ruin the reputation of John Knight the Plaintiff to cover up the . . . family secret." Knight was referring to his rejected theory of defense in the criminal trial, which was that someone else had assaulted the child instead of him.

¶8.   Throughout his pleadings, while attacking the substance of his criminal conviction, Knight insisted he was not attacking his criminal conviction. Instead, he repeatedly claimed the suit was only about how his "good reputation" had been ruined, despite the fact that he had previously incurred multiple felony convictions.

¶9.   Served with a summons and a copy of the complaint, Rebecca responded in a filing that Knight's complaint was "a false allegation." She continued:

> My testimony was not false[.] . . . Every question I answered was answered in truth and to the very best of my memory and knowledge. I, personally, do not see how defamation of character was committed when there was picture proof of the crime John Knight committed against my daughter.

¶10.   Knight filed a motion seeking a default judgment against the minor he had been convicted of abusing. While her mother had responded to his lawsuit, Jane had not because she was never served with process. Nonetheless, Knight demanded a monetary award in a default judgment from the victim he had been convicted of harming.

¶11.   Rebecca subsequently filed a longer response to the lawsuit, detailing in her own handwriting how "this civil suit filed against me, not only has no merit, but is also a form of

harassment." As to her daughter, the two were estranged, and she could not be found. In support of her argument that the suit was without merit, Rebecca attached the sentencing order from Knight's trial, which had found him "guilty as charged" and sentenced him as a habitual offender to life without parole.

¶12. The trial court set the case for a hearing, even transporting Knight from Parchman, and Rebecca appeared as well. Both were without counsel. Because the victim had not been served, the circuit court denied the motion for a default judgment against her.[2] As to her mother, Rebecca, the trial court construed her response as a general denial on the pleadings.

¶13. In accord with longstanding doctrine, the trial court held, "You cannot sue the witnesses in a criminal trial for their testimony" since "with regard to testimony in court, there's immunity there that they have for their testimony[.]" Accordingly, Knight "cannot relitigate whether or not their testimony was true or false[.]" Ultimately, the trial court held it was "obvious to the Court that [Knight's complaint] does not state a cause of action."

¶14. Knight then strained to argue that he was not suing Rebecca for her testimony *during trial* that he had sexually battered her daughter, but that "she is going around stating that I raped her daughter, when I did not." The trial court did not find this point to be a meaningful distinction and dismissed the case with prejudice.

¶15. Knight appealed, and the Supreme Court assigned the case to us for review. Knight filed a pro se brief, while Rebecca did not respond.

---

[2] The trial court's ruling on this point was correct. "In the absence of proper service of process, the court lacks jurisdiction, so any default judgment that it enters is void." *S & M Trucking LLC v. Rogers Oil Co. of Columbia*, 195 So. 3d 217, 332 (¶16) (Miss. Ct. App. 2016).

**STANDARD OF REVIEW**

¶16. "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006). "[T]he allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id*.

**DISCUSSION**

¶17. On appeal, Knight launches into a relitigation of his criminal conviction, arguing the same theory—which failed him in his criminal trial—that it was not he, but another person, who sexually assaulted his stepdaughter. To this end Knight then ascribes a motive to Rebecca—that she was mad he was leaving her for another woman after only two days of marriage. None of his arguments meaningfully grapple with the elements of defamation, the tort which he claimed against Rebecca, nor the trial court's ruling that a witness is immune from suit in cases of this type.

¶18. Defamation has four elements that must be proved:

(1) a false and defamatory statement concerning the plaintiff;
(2) unprivileged publication to a third party;
(3) fault amounting at least to negligence on the part of the publisher;
(4) and either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Neilson v. Dawson*, 155 So. 3d 920, 923 (¶8) (Miss. Ct. App. 2014) (alterations omitted). The Mississippi Supreme Court has ruled that "[i]n defamation actions, then, the threshold question . . . is whether the published statements are false." *Blake v. Gannett Co.*, 529 So.

5

2d 595, 602 (Miss. 1988). "Truth is a complete defense to an action for libel." *Id*.

Furthermore, "the plaintiff has the burden of proving falsity." *Id*.

¶19. So normally in a defamation case, we would look to whether Rebecca's statements were false, and Knight would have the burden of proving them false. However, in this case the second element, whether the statement is privileged, is fully dispositive.[3]

¶20. "[T]he general rule" is that any "matter published . . . in a judicial proceeding . . . is absolutely privileged." *Gunter v. Reeves*, 198 Miss. 31, 37, 21 So. 2d 468, 470 (1945); *see also Knotts by Knotts v. Hassell*, 659 So. 2d 886, 890 (Miss. 1995) ("This Court has long recognized the absolute privilege that is attached to relevant statements made during the course of judicial proceedings").

¶21. In other words, the testimony of a witness in a criminal or civil trial cannot be the basis of a civil lawsuit. As the United States Court of Appeals for the Fifth Circuit has summarized, "a witness who testifies at an adversarial hearing is absolutely immune from suit based upon that testimony." *Sage v. McElveen*, No. 94-40451, 53 F.3d 1280, 1995 WL 295869, at *2 (5th Cir. 1995) (unpublished). Indeed, the privilege is so strong that our Supreme Court has even barred civil actions when they are "based upon perjured testimony." *Knotts*, 659 So. 2d at 890.

---

[3] The case was also filed far beyond the statute of limitations. The trial in which Rebecca testified Knight abused her daughter was held in 2015. "Under Mississippi Code Annotated section 15-1-35, causes of action for defamation must be brought within one year of their accrual." *Hudson v. Palmer*, 977 So. 2d 369, 379 (¶21) (Miss. Ct. App. 2007). Knight did not file suit until 2018, well after the limitations period had run; however, Rebecca did not invoke the affirmative defense of the statute of limitations as a basis for dismissal.

¶22. Mississippi cases barring liability for statements made in a judicial proceeding are in accord reaching back to the nineteenth century. *See Verner v. Verner*, 64 Miss. 321, 324, 1 So. 479, 480 (1887) ("The immunity of a witness in a judicial proceeding from liability to an action for slander is not affected" by a statute making certain words actionable). Furthermore, the United States Supreme Court has traced the doctrine itself back to English common law as early as the sixteenth century. *See Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983). The overarching public policy is to leave those "'paths which lead to the ascertainment of truth . . . as free and unobstructed as possible.'" *Id*. at 331 (quoting *Calkins v. Sumner*, 13 Wis. 193, 197 (1860)). Immunizing statements made in a judicial proceeding also precludes at least "two forms of self-censorship"—the concern that "witnesses might be reluctant to come forward to testify" and that a witness's "testimony might be distorted by the fear of subsequent liability." *Id*.

¶23. Knight sued Rebecca for stating he sexually battered her daughter. Rebecca testified along the same lines during his criminal trial, and he was convicted upon that testimony, among much other proof. In line with the cases above, the testimony Rebecca gave in Knight's criminal trial is absolutely privileged, and a lawsuit cannot be based upon that testimony.

¶24. On appeal, Knight strains to remove himself from the general rule by the pretense that he is not suing Rebecca for what she said during his trial—but for the *exact same* statements she has said outside of the courtroom. In this unique situation there is no difference, as the statements were brought within the safe harbor of a judicial proceeding and sworn to under

7

oath by Rebecca in front of a jury of Knight's peers. The lawsuit is barred for exactly the same public policy that has been declared in cases of this type for centuries. Allowing suits of this type could intimidate witnesses from testifying in criminal trials, particularly those parents who are seeking to shield a child from a sexual predator.

¶25. The trial court was fully correct in finding that the lawsuit for defamation failed to state a claim. The judgment is affirmed.

¶26. **AFFIRMED**.

**CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. BARNES, C.J., AND WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**